GEORGE CHAPMAN, PLAINTIFF *v.* HON. RAYMOND J. DONOVAN, DEFENDANT

Court No. 85-1-00049

Before DiCARLO, *Judge.*

(Decided October 25, 1985)

*George Chapman pro se.*
*Richard K. Willard,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch (*Sheila N. Ziff*), for defendant.

*Memorandum Opinion and Order*

DiCARLO, *Judge:* Plaintiff, formerly a chemical processes operator at the Duolite International, Inc. (Duolite) plant at Redwood City,

California, challenges the determination of the Secretary of Labor (Labor) that workers at the plant are ineligible for trade adjustment assistance under section 223 of the Trade Act of 1974 (the Act), 19 U.S.C. § 2273 (1982).

After reviewing the administrative record and the arguments of the parties, the Court holds that Labor's denial of certification is not supported by substantial evidence, and the case is remanded for further consideration in accordance with this opinion.

On September 6, 1984, plaintiff and two co-workers petitioned for certification of eligibility to apply for trade adjustment assistance benefits on behalf of twenty-one chemical workers (petitioners), approximately a quarter of the total workforce at the Redwood City plant. Labor published a notice in the Federal Register stating that it had received a petition and instituted an investigation. 49 Fed. Reg. 39,395 (1984).

The petition was denied on December 21, 1984, 49 Fed. Reg. 49,733 (1984). Labor found that the workers were not eligible for assistance because an increase in imports did not contribute importantly to reduced production at the Redwood City plant and to the workers' separation from employment as required for certification of eligibility to apply for trade adjustment assistance by section 222(3) of the Act, 19 U.S.C. § 2272(3) (1982).[1] The notice of Labor's determination stated in pertinent part:

> Petitioners allege that increased imports by Duolite contributed importantly to the separation of workers at the Redwood City plant. Imports from Duolite's facility in France increased substantially in January through May 1984 compared to the same period in 1983. However, production at Redwood City did not decline during this period.
>
> In May 1984 Diamond Shamrock Corporation, Duolite's parent company, completed negotiations with a major international chemical manufacturer for the sale of Duolite's Redwood City plant and the Duolite plant located in France.
>
> Subsequent to taking over the Redwood City facility, the new firm restructured the production schedule resulting in the separation of several workers in June 1984.
>
> Imports of surface-active agents are negligible. Imports were less than two percent in relation to domestic production in 1982. Although 1983 domestic production figures are not yet available, trade and industry sources indicate that imports remained at less than two percent in relation to domestic production.

49 Fed. Reg. 49,733.

Plaintiff brought this action *pro se* to challenge the denial. His summons and complaint consist of the following holograph at the end of a copy of Labor's determination:

---

[1] The other two requirements, that a significant number of workers have lost employment and that sales or production of the firm have decreased absolutely, are not contested by Labor. *See* section 222(1)(2) of the Act, 19 U.S.C § 2272(1)(2).

Sir
According to your 2% imports in 1982 & ½ the plant was lay off in 1984 Would 4% shut down the plant? Somebody gave you the wrong information

*Appeal Requested*

The question before the Court is whether Labor's determination that imports did not contribute importantly to petitioners' separation from employment is supported by substantial evidence on the record. The Court concludes that it is not.

Section 284(b) of the Act, 19 U.S.C. § 2395(b) (1982), provides that "[t]he findings of fact by the Secretary * * * if supported by substantial evidence, shall be conclusive" on the Court. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *NLRB,* 305 U.S. 197, 229 (1938). *See Consolo* v. *Federal Maritime Commission,* 383 U.S. 607, 620 (1966); *Universal Camera Corp.* v. *NLRB,* 340 U.S. 474, 477 (1951). There is also the "further requirement that the rulings made on the basis of those findings be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *Internationa l Union, United Automobile, Aerospace and Agricultural Implement Workers of America* v. *Marshall,* 584 F.2d 390, 396 n.26 (D.C. Cir. 1978).

The Court finds Labor's determination flawed in two respects. First, the record does not indicate the relevance of the negligble level of imports of "surface-active agents" into the United States in 1982, on which Labor relied in its determination. According to the record, the Redwood City plant produced ion-exchange resins, used in water treatment facilities. Workers are entitled to trade adjustment assistance if "increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof were a substantial cause of such total or partial separation, or threat thereof, and of such decline in sales or production." 19 U.S.C. § 2272(3). 29 CFR § 90.2 (1985) defines "like or directly competitive" as "substantially identical" or "substantially equivalent for commercial purposes." There is nothing in the record which indicates whether "surface active agents" are "substantially identical" or "substantially equivalent for commercial purposes" to ion-exchange resins.

More fundamentally, by considering only 1982 data on national imports of "surface active agents," Labor ignored the dramatic increase in ion-exchange resin imports from a Duolite plant in France in the first five months of 1984. The record indicates that sales of the Duolite products in the United States declined 27% from 1982 to 1983, but increased 58.1% in the first five months of 1984 over the same period in 1983. This increase was entirely attributable to imports from Duolite's French plant. These imports increased

176.4% in the first five months of 1984 over the similar period the previous year. Production at the Redwood City plant was about the same in the first five months of 1984 as in the same period in 1983, after declining 31.1% from 1982 to 1983. Thus, even if national imports of "like or directly competitive" products were negligible, the Redwood City workers may be entitled to adjustment assistance if imports from the French plant "contributed importantly" to their separation.[2]

The determination is also flawed because there is not substantial evidence in the record to support a conclusion that the workers were separated for a reason other than imports. The only evidence in the record explaining the worker's separations is as follows:

(1) A statement, possibly a press release, attached to the petition states that Duolite's two plants were sold by Diamond Shamrock Corporation, Duolite's parent company, to Rohm & Haas Company in May, 1984. This statement reads in part:

> "Present Rohm and Haas' plans call for Redwood City to manufacture specialty cation, anion and granular resins only. This continues the direction taken by Duolite over the last two years and will lead to further reduction of staff."

(2) A letter from a Duolite official to prospective employers of petitioners, also attached to the petition, states in part:

> Very recently Diamond Shamrock sold its worldwide interests in the ion exchange business to a firm already well established in this market. As a result of the acquiring company's operation plans for this facility, a number of * * * personnel will not be retained.

(3) One of the petitioners stated to a Labor investigator that Rohm & Haas already owned an ion-exchange plant in Haywood, California and had no need for the Redwod City plant. According to the notes of the investigator, the petitioner said "Diamond wanted to get out of the business—Rohm and Haas wanted its french (sic] plant & Diamond required the purchase of *all* plants in addition to the french facility" (emphasis in original).

(4) A handwritten notation in the record by an unidentified Labor investigator states that "We have no indication that [Rohm & Haas] will import from the French plant."

These statements are not, in the opinion of the Court, sufficient for "a reasonable mind [to] accept as adequate", *Consolidated Edison Co.*

---

[2] The Court finds nothing in the legislative history or judicial interpretation of section 223(3) which would exclude from coverage workers separated because their own company "imports articles like or directly competitive" with articles produced domestically. *See United Shoe Workers of America* v. *Bedell,* 506 F.2d 174, 179–187 (D.C. Cir., 1974) (discussing "like or directly competitive"). *See also* 29 C.F.R. § 90.2, which provides, in part:
"Appropriate subdivision" means an establishment in a multi-establishment firm which produces the domestic articles in question or a distinct part or section of an establishment (whether or not the firm has more than one establishment) where the articles are produced. * * *

* * * * * * *

"Increased imports" means that imports have increased either absolutely or relatively, and would generally mean those increases as have occurred from a representative based period subsequent to the effectiveness of the most recent trade agreement concessions proclaimed by the President beginning in 1968.

v. *NLRB,* 305 U.S. 197, 229 (1938), in support of the conclusion that imports did not contribute importantly to the workers' separation. Nothing in the record indicates where consumers of the products produced at the Redwood City plant turned for ion-exchange resins after that plant reduced production. There is no indication that information was solicited from the Rohm & Haas Company or that any investigation was conducted with respect to this issue beyond the interview with one of the petitioners.

If the trend existing at the time of the sale of the Duolite plants continued, and imports from the French plant continued to increase to satisfy the demand of consumers who purchased products produced at the Redwood City plant, then Labor's determination might not be sustained. "The Secretary's failure to include the factual basis for his final determination leaves the administrative record incomplete." *Katunich* v. *Donovan,* 5 CIT 274, 275 (1983).

Accordingly, the Secretary of Labor's determination is vacated and the action is remanded. The Secretary of Labor is directed to prepare and issue a final determination, consistent with the foregoing opinion, within forty-five days from the date of this opinion and, through counsel, to provide the Court with a copy of his final determination within five days of its issuance.

So ordered.